ENDOWMENT RANK SUPREME LODGE KNIGHTS OF PYTHIAS v.
J. T. TOWNSEND, GUARDIAN.

Decided October 26, 1904.

**1.—Assessment—Insurance—Payments—Pleading.**

In an action to recover on a life insurance policy issued by an assessment company, an allegation that insured had paid "all monthly payments, assessments and dues" was sufficient as against special demurrer, though it did not specify the payments and assessments required and paid.

**2.—Insurance Warranty—Intoxicating Liquors.**

The questions to applicant for insurance, "To what extent do you use intoxicating liquors?" and "Have you always been temperate in their use?" were for the purpose of ascertaining the extent to which applicant used them, and not whether he used them at all.

**3.—Same.**

Evidence considered and held to support finding that a statement in the application of insurance that he did not use intoxicating liquors was true at the time made, although he was shown to have used them before and after taking out the policy.

**4.—Same.**

Evidence considered and held to support finding that death of insured was not caused by using intoxicating liquors.

**5.—Insurance—Warranties—Findings of Fact.**

Failure of the trial court to find that conditions of the policy and statements by the insured in his application constituted warranties, is not material where the findings of law show that the court had treated them as warranties nor where the findings of fact show that warranties had not been broken.

**6.—Findings by Court—Judgment.**

Where the case is tried without a jury, the judgment must be passed upon the findings of the court, and a finding that plaintiff is entitled to recover the principal sum sued, with interest from the date of judgment, will not supply a judgment for such principal sum with interest from the date of its maturity.

Error from the District Court of Llano. Tried below before Hon. Clarence Martin.

*Carlos S. Hardy* and *McLean & Spears,* for appellant.

*Flack & Dalrymple,* for appellee.

EIDSON, ASSOCIATE JUSTICE.—This is an action by John T. Townsend, as guardian of the estate of Fay Townsend, a minor, against plaintiff in error for the recovery of $1000 alleged to be due said minor as beneficiary in an insurance policy or benefit certificate, issued by plaintiff in error on the 23d day of June, 1896, on the life of W. H. Townsend, since deceased, the said W. H. Townsend being the father of the minor Fay Townsend.

Plaintiff in error, who was defendant below, excepted generally and specially to the petition filed by defendant in error, and pleaded general denial, tender back of all fees, dues and assessments paid by the insured, and breach of warranties on the part of the insured, whereby the policy or certificate of insurance was rendered null and void.

The case was submitted to the court without a jury, and judgment was rendered for defendant in error for the sum of $1074.50 and costs of suit.

In the first assignment of error, plaintiff in error contends that the court erred in overruling its first special exception to defendant in error's first amended original petition, upon the ground that said petition shows upon its face that the validity of the contract of insurance sued on was made to depend upon the payment by insured of certain monthly dues and assessments, and does not allege the amounts of such dues and assessments which the insured was required to and did pay, but said petition only sets forth the conclusion of the pleader that all of such dues and assessments had been paid. The petition alleged that in consideration of the payment of the prescribed membership fee contained in the laws governing said endowment rank, and in consideration of the further payment of all assessments thereafter to be made, the defendant did, on the 23d day of June, 1896, execute and deliver to the said W. H. Townsend its policy of insurance; that up to the time of his said death all monthly payments, assessments and dues required by the laws governing said order were fully paid. The ground of objection to the petition was that it did not allege the facts relied upon, but merely stated the conclusion of the pleader that all such dues and assessments had been paid. We think, in pleading the consideration upon which a contract is based, that such allegations are sufficient. However, in the petition in this case it was further alleged that plaintiff could not specifically set out the amounts paid and the dates of such payments, on account of the receipts for such payments and the books showing such payments being in the possession of defendant; and notice was given in said petition to the defendant to produce such books and receipts upon the trial of the case. We are of the opinion that there was no error in the action of the court in overruling such special exception.

The court below filed findings of fact and conclusions of law, which are as follows:

"1. That on the 26th day of May, 1896, W. H. Townsend, who at said date was a member in good standing of subordinate lodge No. 230, Knights of Pythias, located in the town and county of Llano, Texas, applied for membership in the endowment rank of said order, wherein he asked for an endowment of $1000, payable to the plaintiff's ward, Miss Fay Townsend, a daughter of the said W. H. Townsend. That said application was in writing and signed by the said W. H. Townsend, and all questions therein asked were fully answered by him.

"2. That on the 15th day of June, 1896, the said W. H. Townsend was examined by the medical examiner, Dr. J. Duff Brown, of said order, at Llano, Texas. Among the numerous questions propounded by the said medical examiner to said applicant and answered by him was the following, being subdivision A, section 10, 'To what extent do you now use intoxicating liquors? (State kind and average quantity each day.)'" To which applicant answered, "Don't use them." That said medical

examiner passed said applicant and recommended him for membership in said endowment rank.

"3.  That on the 23d day of June, 1896, the defendant issued to said W. H. Townsend its policy of insurance, in writing, based upon said application, whereby it insured the life of said W. H. Townsend in the sum of $1000 for the benefit of the plaintiff's ward.

"4.  That the said W. H. Townsend died on the 29th day of August, 1902.

"5.  That at the time of his death he was a member in good standing of said subordinate lodge No. 230, located in the said town of Llano, and that all monthly payments, assessments and dues required by the laws governing the said order were fully paid by the said W. H. Townsend to said order and upon said policy.

"6.  That the said W. H. Townsend was a practicing physician from time he was accepted as a member of said order until his said death, residing in the town of Llano; that he had an extensive country practice; that he purchased a great deal of whisky during said time; that he used a great deal of such whisky in his prescriptions, in the administering of medicine to his patients; that he left whisky at some six or eight places where he was attending upon the sick, to be given with medicine; that during most of the time he was a member of said order he was a druggist and had a drug store in the town of Llano.

"7.  That while the said Townsend purchased a great deal of whisky during the time he was a member of said order, the evidence shows that he drank very little of it, and on two or three occasions was seen in an intoxicated condition, or at least the witnesses supposed he was intoxicated from his appearance and actions.

"8.  That on the 2d or 3d day of May, 1896, while the said W. H. Townsend was attending upon a sick patient, some eight or ten miles in the country from Llano town, he took three or four drinks of whisky with another party out of a half-pint flask; that he was attending upon said patient for three or four nights at that time, being up during the most of said nights; that at the time he was examined by the medical examiner of said order for membership in the said endowment rank on the 15th day of June, 1896, in response to the question, "To what extent do you now use intoxicating liquors?" he answered, "Don't use them;" that while he had taken some three or four drinks on the 2d. or 3d day of May, 1896, there was no evidence that he used intoxicating liquors on the said 15th day of June, 1896.

"9.  That during the time from the date he become a member of the said endowment rank and his death the said W. H. Townsend occasionally drank a glass of beer, but there is no evidence showing that he drank beer to excess, or that he drank whisky over the bar in any quantity.

"10.  That the proper proof of the death of the said W. H. Townsend was furnished to the defendant on or about the 1st day of November, 1902; that the plaintiff, as the guardian of the estate of the

minor Fay Townsend, made the proper demand for the payment of said insurance policy; that he is still the owner and holder of said policy and that no part of the same has been paid.

"11. That the evidence does not show that the said W. H. Townsend made any false statement in his application for membership in the endowment rank of the defendant as to his use of narcotics or intoxicating liquors, nor does the evidence show that he used them to such an extent, after becoming a member of said endowment rank, as to shorten his term of expectancy of life, or to materially injure his health, nor does the testimony show that the death of said W. H. Townsend was caused, or superinduced, by the use of narcotics or intoxicating liquors.

"Conclusions of Law.—1. That the answers contained in the application of the deceased, for membership in the endowment rank of the defendant, dated on the 26th day of May, 1896, and the answers contained in his medical examination, attached to said application and forming a part thereof, dated June 15, 1896, were warranties by the said applicant, and that said application and medical examination became a part of the indemnity or life insurance policy issued to the said W. H. Townsend on the 23d day of June, 1896; and that the testimony that the said applicant was seen to take three or four drinks of whisky on the 2d or 3d day of May, 1896, was not a breach of such warranties on the part of the applicant, the application being made long subsequent thereto.

"2. Testimony that the deceased, W. H. Townsend, applicant, purchased a great deal of whisky subsequent to the date he was accepted as a member of said endowment rank of said order, and during the time he was a member of such order, would not warrant the court, as a proposition of law, in presuming that the deceased, W. H. Townsend, drank the same, in the absence of proof that he did drink it, especially when considered with the fact that he owned a drug store and prescribed whisky for his patients.

"3. Testimony that the deceased, W. H. Townsend was seen in a supposed intoxicated condition on two or three occasions subsequent to the time of the issuance of said indemnity certificate by the defendant, and was seen to drink a few drinks of whisky and several glasses of beer, would not be sufficient to warrant the court to conclude, as a proposition of law, in the absence of direct testimony, that the said death was directly caused or superinduced by the use of intoxicating liquors.

"4. That at the time of the death of the said W. H. Townsend the indemnity certificate or life insurance policy, declared on by the plaintiff in his amended original petition, was a valid and subsisting certificate, and that the same is still valid; that proper proof of the death of the said W. H. Townsend was made to the defendant; that said certificate nor any part of same has been paid; that the plaintiff as the guardian of Fay Townsend, a minor, the beneficiary named in said in-

demnity certificate, is entitled to recover from the defendant the amount of said certificate, $1000, with 6 per cent interest thereon from this date, and all costs of this suit."

Plaintiff in error's second assignment of error is as follows:

"The court erred in rendering judgment for plaintiff, and in refusing to render judgment for defendant, for the reasons: (1) By the contract sued on the insured warranted that the answers made by him to the medical examiner would be full, complete and true, and that if the same should be untrue, the contract of insurance sued on should be null and void; (2) the said insured answered in his medical examination that he did not use intoxicating liquors; and (3) the court found, that from the date insured became a member of the said endowment rank up to his death he occasionally drank a glass of beer, and the undisputed evidence shows that from a date long prior to his said membership, and continuously up to his death, he drank both beer and whisky, both of which are intoxicating, and therefore his answer to the medical examiner that he did not use intoxicating liquors was untrue, and that the contract sued on is null and void."

The certificate of insurance sued on expressly makes the application of the insured, dated May 26, 1896, and the statements certified by him therein to the medical examiner, a part of the contract and expressly states "the conditions, restrictions and limitations subscribed to by said member in his application. * * * And it is understood and agreed that any violation of the within mentioned conditions, or the requirements of the laws now or hereafter in force governing this rank, shall render this certificate and all claims hereunder null and void."

Said application, dated May 26, 1896, contains the following warranties: "I hereby warrant * * * that all questions herein are truthfully and completely answered; * * * and it is further declared that the foregoing answers and statements, * * * together with the answers and statements made or to be made to the medical examiner in the continuance of this application, are warranted to be full, complete and true, and shall, together with all the agreements hereinafter made, form the basis of any certificate of membership issued hereon. It is agreed by myself and binding upon all parties who may hereafter become interested, that if any statement in this application, or to the medical examiner * * * is untrue * * * said certificate shall be null and void, and all right, title and interest in and to the same, as well as the rights of my heirs and beneficiaries to the benefits and privileges accruing to members in good standing of this rank, shall be forfeited."

Among the questions and answers by and to the medical examiner, are the following: "To what extent do you use intoxicating liquors? (State kind and average quantity each date.)" Answer: "Don't use them." "Have you always been temperate in their use? (If not, explain the duration and extent of excess and when last.)" Answer:

"Yes." "Are you engaged in any way in the sale or manufacture of alcoholic liquors?" Answer: "No."

The question, "To what extent do you use intoxicating liquors?" presupposes that the party to whom such question was addressed used intoxicating liquors, and was intended to elicit to what extent he used same. This interpretation of said question is supported by the next question, which is: "Have you always been temperate in their use? (If not, explain the duration and extent of excess and when last.)" Answer: "Yes." The last question and the answer "Yes" thereto, construed in connection with the first and the answer thereto, "Don't use them," lead us to the conclusion that the purpose of these questions was to ascertain not whether the applicant used intoxicating liquors at all, but the extent to which he used them, and the answers to these questions furnished the desired information; and the insurers could not reasonably have been misled by such answers. We are further of opinion that there is testimony in the record supporting the statement that at the time of answering those questions the applicant was and had been theretofore temperate in the use of intoxicating liquors.

Plaintiff in error's third assignment of error is as follows: "The court erred in rendering judgment for plaintiff, and in refusing to render judgment for defendant, for the reasons: (1) It was warranted by the insured that if his death was caused or superinduced by the use of intoxicating liquors the contract sued on should be null and void; (2) the great preponderance of the evidence, both direct and circumstantial, shows that insured's death was caused or superinduced by the use of intoxicating liquors; and defendant having done exact equity by tendering to plaintiff all fees, dues and assessments paid by the insured, the court should have held the contract of insurance sued on to be null and void by reason of said breach of warranty, and should have rendered judgment for the defendant."

The application of the insured contained this provision: "It is agreed that * * * if death is caused or superinduced by the use of intoxicating liquors, * * * then the certificate issued upon this application shall be null and void, and all claims on account of such membership shall be forfeited."

There is a conflict in the evidence upon this issue, that of Dr. Selman tending to support the theory that the use of intoxicating liquors had something to do with the death of W. H. Townsend; while that of Dr. Ed Townsend and Ed Simmons tends to show that the use of intoxicating liquors had no influence or effect whatever in causing or superinducing his death. And the testimony of other witnesses tends to show only a temperate use of intoxicating liquors by the deceased from the time of the issuance of his policy of insurance to the date of his death. The court below had all the witnesses before him, heard them testify, and saw their manner and deportment upon the witness stand, and was therefore much better situated to pass upon and reconcile or solve this conflict in the evidence than this court, and he has done so by finding

against the contention of plaintiff in error, and we do not feel authorized to disturb such finding.

The fourth, fifth, sixth, seventh, eighth and tenth assignments of error, while stated in different language, relate to the same matters as the third and ninth assignments, and are overruled upon the grounds stated in disposing of the third and fourth assignments of error.

The ninth assignment of error is as follows: "The court erred in his first conclusion of law in failing and refusing to find that the printed terms and conditions set forth in contract of insurance sued on, and the application upon which same was based and forming a part thereof, were warranties on the part of the insured, and in limiting the warranties on the part of said insured to his answers to direct questions propounded to him in said application, when in truth and in fact the terms and conditions set out in said contract of insurance and the application upon which same was based, and forming a part thereof, especially those set out in defendant's answer, were warranties on the part of said insured."

While the court made no special affirmative finding that the terms and conditions referred to in the above assignment were warranties, his findings of fact and conclusions of law clearly indicate that he treated them as warranties, so that plaintiff has not been prejudiced by the failure to make a special finding upon the matters embraced in such terms and conditions. And the finding of fact that the deceased's death was not caused or superinduced by the use of intoxicating liquors renders such omission harmless.

The eleventh assignment of error, which is as follows,—"The court erred in rendering judgment for plaintiff for $1074.50, when the court's conclusion of law shows that plaintiff was only entitled to recover judgment for $1000 with 6 per cent interest thereon from the date of the judgment, the judgment rendered by the court not being supported by his conclusions of law,"—is, in our opinion, well taken and is sustained. The court having found as a matter of law that the plaintiff was entitled to recover of defendant $1000, with 6 per cent interest thereon from the date of such judgment, there was no authority for entering or basis upon which to enter a judgment for interest at 6 per cent on the principal sum of $1000 from the 1st of November, 1902, amounting to $74.50. And we here now reform said judgment, so that the plaintiff, defendant in error herein, will not recover any interest until after the date of said judgment, and that he recover interest on said principal sum of $1000 from the date of said judgment at the rate of 6 per cent per annum; and the judgment of the court below so reformed is affirmed.

*Reformed and affirmed.*